## Newton v. Commonwealth.

(Decided May 28, 1937.)

794

GUY BRIGGS for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-
LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirm-
ing.

At his separate trial of an indictment returned by the Franklin county grand jury jointly accusing him, Willie True, and Ernest Wise of robbing Esker Devers by forcibly taking from his person property of value, the appellant, Louis Newton, was convicted and punished by confinement in the penitentiary for two years. His motion for a new trial was overruled, and from the judgment pronounced thereon he prosecutes this appeal, seeking a reversal, as stated in brief of his counsel, "solely upon the ground that the verdict was contrary to the evidence and was the result of prejudice and bias of the jury." The charged robbery occurred in the early part of the evening, which was "about dark" of February 5, 1936. The location was on the river detour route around the railroad tunnel in the eastern part of the city of Frankfort, Ky., while the victim was on his way home. His family consisted of some children whose mother had previously died.

We shall not undertake to set out the described wanderings of the parties as detailed by defendants after they met the alleged victim some time following the middle of the afternoon of that day. However, there is no doubt but that they all indulged in more or less drinking, but none of them appear to have become staggering drunk. According to the robbed man, he left the three defendants in the indictment not far from the west end of the railroad tunnel and started on his route home; that he had in the meantime purchased two garments for some of his girl children which were wrapped in separate bundles and which he was carrying; that after he had gotten some distance along his detour route the defendants in the indictment hailed him and he stopped while they approached him; that

when they arrived where he was they demanded his money and his property, and that True, one of the indicted, beat him in the face and over the head with something like a policeman's billy, whilst appellant took property from his person, including a $10 bill, and the two bundles of merchandise referred to; that soon thereafter he started home and met his son-in-law and his daughter, who were on their way to a picture show, and the son-in-law, who testified in the case, with perhaps another witness, saw the beat-up condition of the victim's face as he had so testified.

Both the son-in-law and father-in-law then returned to the city and soon thereafter came across Wise, one of the defendants in the indictment, and procured his arrest. Later on in the night the other two were arrested, and it was discovered that one of the packages of which the victim was robbed was in the possession of a young lady in the north part of Frankfort, and it was later procured. Both she and appellant testified that the latter delivered the package to her, but with the request that she was to keep it until the next day and then return it to True, who appears to have either operated, or in some manner assisted in the operation of, a barbershop on Broadway street in Frankfort. The other package of merchandise was never accounted for, but defendants do not deny having had possession of both. However, they stated that, when Devers reached the junction of High and Main streets and was about to enter upon the detour route, he suddenly declared that he wanted to go back to town to get another drink and handed to True the two packages of merchandise, which the latter agreed to keep until the victim came to the barbershop after them. That testimony is vigorously denied by Devers, and the contradictions in the testimony of the three accused persons in several particulars is most convincing that their story was a manufactured one, gotten up for the purpose of explaining why they were found in possession of the two articles of merchandise which admittedly were in the possession of Devers while he was in company with the three defendants.

As an illustration of the untrustworthiness of the testimony of the defendants, appellant testified that, although his co-defendant True agreed to keep the two bundles of merchandise for Devers at the barbershop

where True worked, they were not left at that place because it was closed and that True then gave him (appellant) the package containing a dress, which he (appellant) later in the night delivered to the young lady above referred to. That story carries with it the implication that True, although he worked at the barbershop, had no key by which to open it so as to enable him to leave the packages there as he had agreed to do, according to the testimony of the defendants. True, however, when he was on the stand was asked:

"Why didn't you stop at your barber shop and put up those things (the two packages) at your brother's? A. To tell truth, we were all drinking and I just walked on.

"Q. What became of the clothes (meaning the two packages)? A. I had one in my pocket, and I gave Mr. Newton the other to put in his pocket."

He then testified that they went by the barbershop to a saloon and took some more drinks and that within a short while "I came back to the barber shop. Q. What became of Mr. Newton? A. I don't know; the last time I seen Mr. Newton he was in Aleck Gordon's." He then fixed the hour at about 7:30 or 8 o'clock.

Other equally glaring inconsistencies could easily be pointed out and all of which are both contradictory as well as incredible. If, however, no such weakening circumstances appeared in the case, then the strongest presentation of appellant's sole ground for a reversal would be that the three defendants in the indictment in their testimony contradicted that given by their alleged victim. But we have held in an unbroken line of opinions that a verdict will not be considered as "flagrantly against the evidence" so as to authorize a reversal of a judgment based upon a verdict of a properly instructed jury, solely because a greater number of witnesses testified against the finding of the jury than did the number of witnesses supporting it. The cases so holding are so numerous, and the rule as stated is so universal, that a citation of them is deemed unnecessary. Doubly true and correct is that holding when the testimony given by the numerically greater number of witnesses is rendered incredible in the manner hereinbefore pointed out, and when the greater number consists solely of those jointly accused of committing the crime.

In addition to what we have said, it was proven, and admitted by the defendants, that appellant and Wise were each ex-convicts in the penitentiary for the commission of felonies. In the circumstances, and without further elaboration it is clearly manifest that this is not a case authorizing a reversal of a verdict of conviction solely upon the ground that it was flagrantly against the evidence, or that it was the result of passion and prejudice. On the contrary, we conclude that the verdict of the jury was amply supported by the testimony heard at the trial when viewed in the light of all the circumstances. No witness testified, nor were there any circumstances in the case to indicate, how the victim was beaten up in the manner described unless it had been done as he narrated it. Some of the property taken from his person was traced to the possession of appellant, one of the accused in the indictment, and his explanation of that possession is weak, incredible, and not in accord with usual conduct of an innocent person, but it is in accord with conduct of one who is guilty.

We find ourselves unable to sustain the only ground relied on for a reversal of the judgment, and for which reason it is affirmed.